UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

COREY SHEPARD,                    )
                                  )
              Plaintiff           )
                                  )
       v.                         )    CIVIL NO. 2:09 cv 353
                                  )
GUY MIKULICH,                     )
CPL GERALD GONZALEZ,              )
                                  )
              Defendants          )

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 28] filed by the defendants, Guy Mikulich and Gerald Gonzalez, on August 10, 2011. For the following reasons, the motion is **GRANTED**.

Background

On November 20, 2007, Lake County Officer Guy Mikulich was on patrol and observed a disabled vehicle on the side of Cline Avenue in Lake County, Indiana. Mikulich stopped to assess the situation. Mikulich spoke with the driver of the vehicle who, while holding an empty gas can, advised that he had run out of gas. Mikulich offered the driver a ride to the nearest gas station to get fuel, but the driver declined and returned to the disabled vehicle. As the vehicle pulled away, Mikulich observed that the license plate tags were expired and radioed Corporal Gerald Gonzalez for assistance.

Mikulich followed the vehicle to a gas station, observed three individuals in the vehicle, and then approached the driver. The driver informed Mikulich that he was operating his vehicle with expired tags because it could not pass emissions testing. When asked for identification, the driver identified himself as Darnell Rias, and the front seat passenger identified himself as Davie Norwood.  The plaintiff, Corey Shepard, was seated on the rear passenger side of the vehicle.  Shepard refused to give Mikulich identification, claiming he did not have any on his person, and also would not provide Mikulich with his name.

At this point, Gonzalez arrived to assist Mikulich in the traffic stop.  Mikulich instructed Shepard to exit the vehicle and advised him that he would be placed under arrest for refusing to identify himself if he did not provide his name.  Shepard then stated his name, and Mikulich radioed dispatch, which returned information establishing that Shepard had an outstanding warrant stemming from a prior Driving While Suspended arrest.  This prompted Mikulich to place Shepard under arrest using handcuffs. While being escorted to the patrol car, Shepard became verbally abusive and profane with Mikulich and Gonzalez and twice attempted to pull away from the officers.  After Shepard was secured in the back seat of Mikulich's patrol car, the officers

released Darnell Rias and Davie Norwood from the scene, and Shepard was transported to the Lake County Jail.

During transit to the Lake County Jail, Mikulich felt bumping against the rear of his seat and observed Shepard "going into his pockets." (Defts. Ex. A) Mikulich warned Shepard that if he did not remain still, Mikulich would have to re-secure him. Moments later, Mikulich observed Shepard release his seat belt, lay down in the back seat, and attempt to move his arms to the front of his person. Mikulich notified dispatch that he needed to stop his patrol car in order to re-secure the suspect. As Mikulich opened the back door of the patrol car, Shepard told Mikulich that he "better not fucking touch him." (Defts. Ex. A) Mikulich then advised Shepard that he would need to re-secure him using leg restraints and asked him to exit the patrol car. After refusing several times to comply with Mikulich's request, Shepard began to kick Mikulich in the leg. Mikulich responded by physically removing Shepard and placing him on the ground. Once out of the vehicle, Shepard again kicked Mikulich.

Lake County Sheriff's Officer Molina arrived to assist Mikulich. Molina retrieved a leg strap to place on and control Shepard's legs. Mikulich order Shepard to stop kicking at the officers or he would use pepper spray to control him. Shepard did not follow the commands and continued to resist physically,

prompting Mikulich to use the pepper spray.  After the spray was dispersed, Shepard stopped physically resisting the officers, but he continued to be verbally abusive.  The officers re-secured Shepard and placed him back into the patrol car.  Once inside, Shepard began to hit the patrol car with his head.  Mikulich warned Shepard that if he did not stop, the pepper spray would be dispersed again.  Shepard stopped and was taken to the Lake County Jail where custody was transferred.

Shepard was charged with battery on a law enforcement officer, resisting law enforcement, and two counts of disorderly conduct.  On June 2, 2009, Shepard entered into a plea agreement and pled guilty to Resisting Law Enforcement.  As a condition of the plea agreement, Shepard agreed to take an anger management class and agreed to write a letter of apology to Mikulich.

On October 21, 2009, Shepard filed a *pro se* complaint against defendants Mikulich and Gonzalez.  Shepard alleges Mikulich used racial profiling and excessive force during the November 20, 2007 arrest.  He also complains that Mikulich slandered his name by making false statements.  Finally, Shepard alleges that Gonzalez "snatch[ed] my wave cap before he know anything about me" [sic].  (Pltf. Comp. p. 1)

On August 10, 2011, the defendants filed a Motion for Summary Judgment.  On August 26, 2011, Shepard filed a hand

written letter addressed to the "United States District Court."
(Letter from Pltf. to Ct. of Aug. 26, 2011)  The letter was a
recitation of the facts surrounding the November 20, 2007 arrest
and was signed at the bottom by Shepard.  Although unsure of its
intended purpose, defense counsel treated Shepard's handwritten
letter as a response to the motion for summary judgment and filed
a reply brief on September 8, 2011.

Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary
judgment is proper only if it is demonstrated that "there is no
genuine issue as to any material fact and the moving party is
entitled to a judgment as a matter of law." *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).
The burden is upon the moving party to establish that no material
facts are in genuine dispute, and any doubt as to the existence
of a genuine issue must be resolved against the moving party.
*Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct.
1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at
786.  A fact is material if it is outcome determinative under
applicable law.  There must be evidence on which the jury reason-
ably could find for the nonmoving party.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202, 212 (1986); **Stephens**, 569 F.3d at 786; **Wheeler v. Lawson**,
539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of
claims in which issues of intent, good faith, and other subjec-
tive feelings play dominant roles. **Ashman v. Barrows,** 438 F.3d
781, 784 (7th Cir. 2006). Upon review, the court does not evalu-
ate the weight of the evidence, judge the credibility of wit-
nesses, or determine the ultimate truth of the matter; rather,
the court will determine whether there exists a genuine issue of
triable fact. **Wheeler**, 539 F.3d at 634 (*citing* **Anderson**, 477
U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court
must determine whether the evidence presented by the party
opposed to the summary judgment is such that a reasonable jury
might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.
>
> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.
>
> **Anderson**, 477 U.S. at 250, 106 S.Ct. at 2511

6

See also ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durfling-er,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

"As a *pro se* litigant, [a] [p]laintiff is permitted a more lenient standard with respect to his pleadings than that imposed on a practicing attorney." ***Cintron v. St. Gobain Abbrassives, Inc.***, 2004 WL 3142556, *1 (S.D. Ind. Nov. 18, 2004). Although the court recognizes that *pro se* litigants face special chal-lenges that litigants represented by counsel do not, *pro se* litigants are not excused from following procedural rules simply because the "rules of procedure are based on the assumption that litigation is normally conducted by lawyers." ***Lee v. Wal-Mart Stores***, 1994 WL 899240, *1 (N.D. Ind. Apr. 12, 1994). As the ***Lee*** court explained,

> [the courts] have never suggested that proce-
> dural rules in ordinary civil litigation

should be interpreted so as to excuse mis-
takes by those who proceed without counsel.
As we have noted before, "in the long run,
experience teaches that strict adherence to
the procedural requirements specified by the
legislature is the best guarantee of even-
handed administration of the law."

*Lee*, 1994 WL 899240 at *1 (*quoting **Mohasco
Corp. v. Silver**, 447 U.S. 807, 826, 100 S.Ct.
2486, 2497, 65 L.Ed.2d 532 (1980)).

A defendant filing a motion for summary judgment must warn a *pro se* plaintiff of the consequences of failing to respond to the motion. ***Timms v. Frank***, 953 F.2d 281, 285 (7th Cir. 1992). The notice must include the text of Federal Rule of Civil Procedure 56(e) and a short statement informing the plaintiff that all factual assertions made by the defendant will be taken as true should the plaintiff fail to respond. ***Timms***, 953 F.2d at 285. The defendants served a proper ***Timms*** notice to Shepard on August 10, 2011. Pursuant to Local Rule 56.1(b), Shepard had 28 days to respond and submit affidavits or other documentary evidence. Local Rule 56.1(b); ***Timms***, 953 F.2d at 285. On August 26, 2011, Shepard filed a handwritten letter reciting the facts from his complaint. Because the letter addresses the arguments raised in the defendants' motion for summary judgment and does not comply with the affidavit requirements of Rule 56(c)(4), the court will construe Shepard's letter as a response to the motion for summary judgment. However, the factual allegations contained in the

letter cannot be considered in determining whether there are any factual disputes.

Title 42 U.S.C. §1983 provides a "federal cause of action for the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082, 129 L.Ed.2d 93 (1994).  Section 1983 does not itself create substantive rights, but "it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).  When analyzing a §1983 claim, it is necessary to identify the specific constitutional right that was violated. *Spiegel*, 121 F.3d at 254. Then, the validity of the claim must be judged by reference to the specific constitutional standard that governs the right. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

Shepard initially claims that he was the victim of racial profiling.  A claim of racial profiling requires an analysis under the Equal Protection Clause of the Fourteenth Amendment. *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001) (*citing Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).  In order to establish an Equal Protection Clause violation, the plaintiff must prove

that the actions of the defendant were motivated by a discriminatory purpose and had a discriminatory effect. *Chavez*, 251 F.3d at 635.

"'Discriminatory purpose' . . . implies more than . . . intent as awareness of consequences. It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of' . . . its adverse effects upon an identifiable group." *Chavez*, 251 F.3d at 645. Showing that the defendant was negligent in his actions will not suffice. *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996). The defendant must have acted with intent or deliberate indifference against the plaintiff because of membership in a definable class. *Nabozny*, 92 F.3d at 454 (*quoting* **Archie v. City of Racine**, 847 F.2d 1211, 1219 (7th Cir. 1988)).

"To prove discriminatory effect, the [plaintiff is] required to show that [he is] a member of a protected class, that [he is] otherwise similarly situated to members of the unprotected class, and that [the plaintiff was] treated differently from members of the unprotected class." *Chavez*, 251 F.3d at 636. The plaintiff may prove that he was treated differently from members of the unprotected class either by naming specific similarly situated individuals or through the use of statistics. *Chavez*, 251 F.3d at 636. "Of course, parties may not prove discrimination merely

by providing the court with statistical analyses. The statistics proffered must address the crucial question of whether one class is being treated differently from another class that is otherwise similarly situated." *Chavez*, 251 F.3d at 638.

Shepard has not offered any evidence to establish that Mikulich acted either with a discriminatory purpose or that his actions had a discriminatory effect.  Shepard has not pointed to any similarly situated individuals outside the protected class who were treated more favorably or offered any statistics to show that African Americans were treated less favorably.

Moreover, the course of events do not suggest that Mikulich acted with a discriminatory purpose.[1]  Shepard was a passenger in a vehicle that had expired tags, which gave Mikulich a valid reason to make a traffic stop.[2]  During the traffic stop, Mikulich asked the driver and passengers for their names.  Only Shepard refused to give his name, giving Mikulich cause to investigate Shepard for his suspicious behavior.  The investiga-

---

[1] It should be noted that Mikulich first offered assistance to Rias when he said that he was out of gas.  Rias then drove off, causing Mikulich to be suspicious.

[2] Shepard alleges in his Response that the tags on the license plate actually were valid temporary tags, not expired tags.  Even if after the traffic stop was made Mikulich found the tags to be valid temporary tags, Mikulich would have only acted negligently.  As mentioned, negligent acts of an officer do not suffice to establish a violation of the Equal Protection Clause.  Moreover, at the very least, Mikulich believed the tags were expired at the time he decided to pull over the vehicle.  Thus, it can be said that it was Mikulich's intent to make a traffic stop because he believed the tags to be expired, not because Mikulich intended to discriminate against Shepard because of his race.  Shepard has not submitted any evidence to establish that Mikulich's report of expired tags was a pretense for racial profiling.

tion resulting from Shepard's initial refusal to identify himself revealed that Shepard was the subject of an outstanding warrant. At that point, Mikulich arrested Shepard on the outstanding warrant, not because he was black. There is nothing in the record to suggest that Mikulich would have handled the situation in a different manner if the occupants of the vehicle were outside the protected class.

Given the absence of proof that Mikulich treated Shepard differently than members outside the protected class, Shepard has not sustained his burden of proving that Mikulich initiated the traffic stop and subsequent investigations "with a nefarious discriminatory purpose", nor did Shepard prove Mikulich "discriminated against him based on his membership in a definable class." Therefore, Shepard's racial profiling claim must fail.

Shepard next alleges that Mikulich violated his constitutional rights by applying excessive force. Mikulich counters that he did not apply excessive force and is shielded from suit by qualified immunity. State officials are entitled to qualified immunity from suit if they acted reasonably in carrying out their assignments. *See **Saucier v. Katz***, 533 U.S. 194, 201—02, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Although the privilege of qualified immunity is a defense, the plaintiff carries the

burden of defeating it.  ***Molina ex rel. Molina v. Cooper***, 325
F.3d 963, 968 (7th Cir. 2003).

Whether a defendant is entitled to qualified immunity is a
two-step analysis.  The court first must determine whether the
facts show that the defendant's con- duct violated a constitu-
tional right.  If so, the focus turns to whether the right was
clearly established at the time of the alleged injury, such that
a reasonable officer would understand that his actions were in
violation of that right*.  **Saucier**, 533 U.S. at 201—02, 121 S.Ct.
at 2156.  The right allegedly violated must have been "clearly
established" in a "particularized" sense, and "[t]he contours of
the right must be sufficiently clear that a reasonable official
would understand that what he is doing violates that right" at
the time of the incident.  ***Andersen v. Creighton***, 483 U.S. 635,
639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  *See also **Auriemma
v. Rice***, 910 F.2d 1449, 1455 (7th Cir. 1990).  The court will
examine existing case law to determine whether the violation was
clearly established so that the officers knew they were violating
the law. Viewed as a whole, the doctrine of qualified immunity
erects a substantial barrier for plaintiffs, and appropriately so
because qualified immunity is "designed to shield from civil
immunity 'all but the plainly incompetent or those who knowingly
violate the law.'"  ***Kernats v. O'Sullivan***, 35 F.3d 1171, 1177

(7th Cir. 1994). The determination of whether individual defen-
dants are immune from liability is a decision for the court,
rather than for a jury. **Hughes v. Meyer**, 880 F.2d 967, 969 (7th
Cir. 1989).

When determining whether an officer acted reasonably during
the course of an arrest, investigatory stop, or other seizure of
a citizen, or whether he applied excessive force, the court
analyzes the claim under the Fourth Amendment reasonableness
standard. **Graham**, 490 U.S. at 394, 109 S.Ct. at 1870-71; **Holmes
v. Village of Hoffman Estates**, 511 F.3d 673 (7th Cir. 2007);
**Estate of Phillips v. City of Milwaukee**, 123 F.3d 586, 592 (7th
Cir. 1997). This analysis looks to the totality of the circum-
stances, assessing whether the force used was excessive in light
of the severity of the crime for which the plaintiff was being
arrested, whether the plaintiff posed a threat to the safety of
the officers or to other persons, and whether the plaintiff was
resisting the officers or attempting to flee. **Graham**, 490 U.S. at
396, 109 S.Ct. at 1872; **Holmes**, 511 F.3d at 673. _See also_ **Fidler
v. City of Indianapolis**, 428 F.Supp.2d 857, 862 (S.D. Ind. 2006).
The measure of reasonableness is made "from the perspective of a
reasonable officer on the scene, rather than with the 20/20
vision of hindsight," and pays "careful attention to the facts
and circumstances of each particular case." **Graham,** 490 U.S. at

14

396, 109 S.Ct. at 1872. In determining reasonableness, the court must account for the fact that police officers often have to make split-second decisions in tense situations. For this reason, not every push or shove violates the Fourth Amendment. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872.

Shephard has not shown that Mikulich either violated his constitutional rights or acted contrary to clearly established law, defeating his immunity. Rather, the facts reflect that Mikulich's actions were reasonable in light of Shepard's behavior. To begin, Mikulich used handcuffs to arrest Shepard for an outstanding warrant. The use of handcuffs involved no force greater than necessary to detain a person with a warrant. The facts further indicate that, during transportation, Shepard attempted to alter the condition of his restraints and became verbally and physically confrontational. At this point, the perceived threat was that Shepard was attempting to free himself in order to escape. Mikulich took several preventative measures to control Shepard, including leg restraints. When Shepard began to kick Mikulich and the assisting officer, he became an immediate threat to the safety of the officers. Mikulich resorted to pepper spray as a means to protect himself and subdue Shepard. Even after the initial pepper spray, Shepard continued to be disorderly until Mikulich warned of another use of pepper spray.

Mikulich's applications of force were reasonable in relation to the perceived threat during each phase of Shepard's arrest. Mikulich was entitled to use the amount of force necessary to restrain Shepard, and the record reflects that Mikulich applied the force in a sliding scale manner so that the amount of force applied was minimal and proportional to Shepard's resistance. It was Shepard's own uncooperativeness that necessitated any use of force. Shepard has not shown that less force could have been used to gain his cooperation or that his injuries were severe and disproportional to his disobedience. The record does not reflect that the officers applied force when it was unnecessary or continued to do so after Shepard was restrained. It is not clear what lesser degree of force the officers could have taken to restrain Shepard and protect their safety. Mikulich's actions certainly do not fall outside the purview of reasonableness.

Moreover, Shepard has failed to make any showing beyond the allegations in his complaint and re-allegations in his response to the defendants' motion for summary judgment to overcome Mikulich's qualified immunity defense and demonstrate that Mikulich's actions were unreasonable. Because a party cannot rest on his pleadings at the summary judgment stage of litigation, Shepard has not shown that the force used by Mikulich was excessive. Shepard's claim under 42 U.S.C. §1983 fails as against Mikulich.

Shepard also alleges vaguely in his complaint that Mikulich slandered his name by "lying."  Later in his complaint, Shepard explains that he engaged in an exchange of name calling with Mikulich, and in his response to the defendants' motion for summary judgment he states that Mikulich made racial statements in front of everyone at the scene of the arrest. Shepard does not explain whether these statements or others are the basis of his defamation claim.  It also is not clear whether Shepard intends to state a claim for defamation under Indiana law or a deprivation of liberty under the Fourteenth Amendment.  In either case, he has not shown that a genuine issue of material fact remains to be litigated.

Defamation of reputation alone is not enough to establish a §1983 claim under the Fourteenth Amendment.  *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).  "Any harm or injury in reputation, even where inflicted by an officer of the state, does not result in a deprivation of any 'liberty' or 'property' under the due process clause" of the Fourteenth Amendment.  *Paul,* 424 U.S. at 712, 96 S.Ct. at 1166.  To establish a claim under §1983 and the Fourteenth Amendment, more must be involved than simple defamation by a state official.  *Paul*, 424 U.S. at 711—12, 96 S.Ct. at 1166.

Shepard has not provided any information to support the single allegation in his complaint that Mikulich slandered his name by lying. The court cannot discern from this statement the basis of Shepard's defamation claim or the repercussions Shepard faced as a result. Shepard has not set forth any false statements made by Mikulich or shown how these statements resulted in a deprivation of his liberty or property. For this reason, Shepard has failed to show that an issue of material fact remains with regard to whether his rights were violated under the Fourteenth Amendment by defamatory statements made by Mikulich.

Under Indiana law, defamation is "that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. App. 2001). Indiana recognizes two types of defamation: defamation *per se* and defamation *per quod*. *Lessley v. City of Madison, Ind.*, 654 F.Supp.2d 877, 911 (S.D. Ind. 2009). To establish defamation *per quod*, a plaintiff must prove the following elements: (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. App. 2004) (*citing Ratcliff*, 750 N.E.2d at 436). Communications are considered defamatory *per se* when they impute criminal conduct, a loathsome disease, mis-

conduct in a person's trade, profession, office, or occupation, or sexual misconduct to the plaintiff. ***Trail v. Boys and Girls Clubs of Northwest Indiana***, 845 N.E.2d 130, 137 (Ind. 2006). If the communication in question is defamatory *per se*, damages are presumed even without proof of actual harm to the plaintiff's reputation. ***Lovings***, 805 N.E.2d at 447.  If the communication is *pro quod*, the plaintiff must prove special damages.  ***Lessley***, 654 F.Supp.2d at 911.

Whether a communication is defamatory "depends, among other factors, upon the temper of the times [and] the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place." ***Journal—Gazette Co., Inc. v. Bandido's, Inc***., 712 N.E.2d 446, 451 (Ind. 1999). In addition, the communication is to be viewed in context and given its plain and natural meaning as to the idea that it intends to convey. ***Grimes v. Union Planters Bank, N.A.***, 2004 WL 2378841, *21 (S.D. Ind. August 30, 2004). A false statement of fact is required to impose liability for defamation. ***Bandido's***, 712 N.E.2d at 457. *See also* ***Barlow v. Sipes***, 744 N.E.2d 1, 8 (Ind. App. 2001) ("In order to recover in an action for defamation, that which caused the alleged defamation must be both false and defamatory."). The First Amendment protections ensuring the free

interchange of ideas, however, do not require literal truth: "it is sufficient if the statement is substantially true." *Heeb v. Smith*, 613 N.E.2d 416, 420 (Ind. App. 1993).

"The determination of whether a communication is defamatory is generally a question of law for the court." *Lovings*, 805 N.E.2d at 447. However, if the communication is reasonably susceptible to either defamatory or non-defamatory interpretation, that determination becomes a question of fact for the jury. *Lovings*, 805 N.E.2d at 447. *See also West v. Wadlington*, 908 N.E.2d 1157, 1167 (Ind. App. 2009) (holding that a trier of fact reasonably could infer that statement about the plaintiff "attack[ing]" the pastor and his family could have imputed a physical attack and, therefore, criminal conduct); *Glasscock v. Corliss*, 823 N.E.2d 748, 753 (Ind. App. 2005) (*citing Lovings*, 805 N.E.2d at 447); *Cochran v. Indianapolis Newspapers, Inc.*, 372 N.E.2d 1211, 1217 (Ind. App. 1978) ("In determining whether a defamatory meaning is possible, the test is the effect which the article is fairly calculated to produce and impression it would naturally engender in the mind of the average person.").

Again, Shepard's failure to set forth the statements Mikulich made defeats his claim for defamation. Shepard cannot rely on the single allegation in his complaint without demonstrating that some evidence exists which may establish that Mikulich made

false, derogatory statements to others about Shepard.  Absent

knowledge of even the content of the alleged statements, the

court cannot engage in the analysis and determine whether Miku-

lich's statements were of a derogatory nature, and, depending on

the nature of those statements, satisfy the additional elements

of *per quod* or *per se* defamation.  Shepard, who carries the bur-

den of proving that a genuine issue of material fact remains on

his claims, was apprised of his duty to respond to the motion for

summary judgment and has offered nothing to prove that Mikulich

made even a single false derogatory statement about Shepard.

Therefore, Shepard's claim for defamation cannot survive summary

judgment.

Shepard also named Gonzalez as a defendant.  However, Gon-

zalez was not involved in the initial stop, nor did he help re-

secure Shepard.  The only facts pertaining to Gonzalez are that

he unlawfully removed Shepard's wave cap without reason.  It is

unclear exactly which constitutional right Shepard believes

Gonzalez violated.  Regardless, a pleading is insufficient if it

offers "labels and conclusions or a formulaic recitation of the

elements of a cause of action . . . ."  ***Ashcroft v. Iqbal***, 556

U.S. 662, 129 S.Ct. 1938, 1949, 173 L.Ed.2d 868 (2009) (*quoting*

***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555, 127 S.Ct. 1955,

1965, 167 L.Ed.2d 929 (2007)).  Further, a complaint "will not do

. . . if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966). Shepard's complaint has failed to state the theory he was proceeding under or to set forth facts that, if established, would lead to relief. Shepard's response to the motion for summary judgment did not clarify his complaint and only re-alleged that Gonzalez removed Shepard's wave cap. No other mention of unlawful conduct on the part of Gonzalez appeared thereafter. Additionally, even if the claim could be construed so as to establish a valid pleading, Gonzalez would be shielded from liability under the same qualified immunity analysis elaborated above. Therefore, any and all claims against Gonzalez must fail.

_____

Shepard failed to establish any genuine issues of material fact. For this and the aforementioned reasons, the Motion for Summary Judgment filed by the defendants, Guy Mikulich and Gerald Gonzalez, on August 10, 2011, is **GRANTED.**

ENTERED this 13th day of February, 2012

s/ ANDREW P. RODOVICH
    United States Magistrate Judge